ELBERT S. JEMISON AND OTHERS, RESPONDENTS, *v.* THE CITIZENS' SAVINGS BANK OF JEFFERSON, TEXAS, APPELLANT.

*Corporations—agents of undisclosed principals—persons dealing with corporations are chargeable with notice of the purposes for which they are created — when a corporation is not estopped from disputing the validity of contracts made by its officers.*

In this action, brought by the plaintiffs, commission merchants and cotton brokers to recover a balance of money, claimed to have been expended by them in the purchase and sale of cotton futures for the defendant, and for the plaintiffs' commissions, it was shown that the defendant was incorporated under the name of Citizens' Savings Bank of Jefferson, Texas, by an act of the legislature of the State of Texas. It was authorized to carry on the business usually carried on by savings banks in this State, and also to borrow money, buy and sell exchange, bullion, bank notes, government stocks or other securities. The purchases and sales were made by the plaintiffs under the direction of the cashier of the defendant, who informed the plaintiffs that neither himself nor the bank dealt in futures, and that in case he ordered purchases it would only be for good responsible customers who had put up the necessary margin.

*Held,* that as the defendant did not disclose its principals at the time of giving the orders, it was not exonerated from responsibility merely because it stated that it was acting as an agent.

That the plaintiffs were chargeable with notice of the purposes for which the corporation was formed, and that the question as to whether or not they had knowledge of the limitations imposed upon its powers was an immaterial one.

That, as the corporation had no power to speculate in the manner in which it attempted to do, and as the plaintiffs were bound to know this fact, they could not recover the amount claimed.

That, as the entire transaction resulted in a loss, and no property was received by the defendant, the contract was not an executed one within the meaning of that term, as used in the decisions holding that in such cases a defendant corporation cannot claim that the contract was *ultra vires.*

*Whitney Arms Company* v. *Barlow* (63 N. Y.; 62); *The Rider Life Raft Company* v. *Roach* (97 id., 378); *Parish* v. *Wheeler* (22 id., 494) distinguished.

APPEAL by the defendant from a judgment entered against it on a trial by the court without a jury.

*W. D. Guthrie*, for the appellant.

*F. C. Barlow*, for the respondents.

VAN BRUNT, P. J.:

There is no dispute as to the facts which it is necessary to consider in the disposition of this appeal. The action was commenced to recover a balance of money claimed to have been expended by the plaintiffs on the purchase and sale of cotton futures for the defendant and for the plaintiffs' commissions. The plaintiffs, at the times of the transactions referred to, were copartners in business as commission merchants and cotton brokers. The defendant was a corporation created and existing by and under the laws of the State of Texas, and doing business at Jefferson, in that State, being chartered in the year 1871 by an act of the legislature of the State of Texas. The statute incorporating the defendant stated that the general business and object of the corporation should be to receive on deposit or in trust such sums of money as might from time to time be offered therefor by tradesmen, merchants, clerks, laborers, servants and others, to be repaid to such depositors when demanded, at such times, with such interest and under such regulations as the board of directors might from time to time prescribe. The statute further provided that the corporation might loan money according to the Constitution and laws of the State, and might discount in accordance with banking usages, taking such security therefor, either real or personal, as the directors might deem sufficient; that

the corporation should have power to borrow money, buy and sell exchange, bullion, bank notes, government stocks or other securities. But the corporation was not by its charter given the power to deal or speculate in cotton or other articles of merchandise or property. The plaintiffs had no knowledge of the powers of the corporation, or of the laws of Texas in regard to its powers, other than that which is implied from the title or name of the defendants. At the time of the transactions in question, J. H. Parsons was the cashier of the defendant, and the by-laws provided that the board of directors should meet from time to time, as they should appoint, and provided in regard to the cashier that he should have general charge of the business of the bank, and the supervision of its concerns, and that he should have custody of the personal property of the bank and sign all checks and orders, drafts, bills of exchange and certificates of deposit. The transactions in question commenced in January, 1879, at which time Parsons, as cashier, wrote to the plaintiffs, asking what margin and commission they would ask in transactions for the purchase of cotton futures. The plaintiffs answered by letter of the 27th of January, 1879, stating amongst other things that the margin required was $250 per contract, and added : " This will give you an idea how much to require from any of your friends who wish to make an investment."

On the tenth of February, Parsons as cashier, gave the first order by telegraph and wrote on the same day that the order was made for one of their customers who had deposited $250 in accordance with their letter of January twenty-seventh. Other orders were given on the twenty-fourth of May, and on the same day Parsons wrote a letter to the plaintiffs in which he stated that neither himself nor the bank dealt in futures, and that in case he ordered other purchases it would only be for good responsible customers who had put the necessary margin up. Other correspondence was carried on between the parties and orders given, and the final result of the transactions was a loss to recover which this action is brought. In June and July, 1879, upon the ledger of the defendants appeared entries of an account between the plaintiffs and defendant, showing debits and credits to the plaintiffs growing out of dealings in futures. An account also appeared on the defendant's ledger, with one Clopton, showing debits to said Clopton

of losses on futures, and credits of profits, and deposits of margins. By an examination of said entries and accounts the directors could have ascertained that the bank was having dealings in some kind of futures. The defendant claims that it was not bound upon these contracts because they were *ultra vires* and against public policy and that it was acting simply as an agent and not as principal. As the defendant did not disclose its principals at the time of the giving of the orders, it is not exonerated from responsibility merely because it stated that it was acting as an agent.

From the finding of the learned judge, who tried the case, that the plaintiffs had no knowledge of the powers of the defendant corporation or of the laws of Texas, written or otherwise, in regard to its powers and functions other than that which is implied from the title or name of the defendant, it is claimed on the part of the plaintiffs that they were not bound by any of the limitations contained in the defendant's charter, or any laws relating thereto existing in the State of Texas. It is to be inferred, however, from this finding that the knowledge as to the powers of the defendant corporation, which is implied from the title or name of the defendant, the plaintiffs are chargeable with. The title or name of the defendant is the Citizens' Savings Bank of Jefferson, Texas, and the knowledge of the powers of the defendant which the title or name of the defendant implies to citizens of this State is that the defendant had powers similar to those which savings banks in this State had a right to exercise.

The courts have declared in the case of *Sistare* v. *Best* (88 N. Y., 527), in respect to the powers of a savings bank, that " the bank was a savings bank, and there can be no doubt that speculative contracts entered into for the sale of stock by the bank at the stock board, or elsewhere, subject to the hazard and contingencies of gain or loss, would be *ultra vires* and a gross perversion of the powers conferred by its charter." Therefore, applying the rule that the implied knowledge of the plaintiff as to the powers of the defendant was such as the name or title of the defendant gave, they were bound to know from the very nature of its title that speculating in cotton futures by defendant was a gross perversion of the powers conferred by its charter, and that neither its cashier or its board of directors had any power to cause the bank to embark in any such

enterprise. But it will appear upon an examination of the charter of the defendant, that its powers differed very materially from those of a savings bank as known under the laws of this State. It was a corporation having all the banking powers which belong to ordinary incorporated banks, with the exception that it had no power to issue notes for the purposes of a circulation medium, unless the same was done in conformity to the laws of the United States in such case made and provided. In the consideration of the question as to whether these contracts were *ultra vires*, it is necessary to treat it not as a savings bank only, but as an ordinary banking association or corporation.

The rule seems to be well established that parties dealing with corporations are chargeable with notice of the purposes for which the corporation was formed, and that every corporation necessarily carries its charter where it goes, for that is the law of its existence. In *Hoyt* v. *Thompson* (19 N. Y., 208), in respect to corporations, the Court of Appeals say: "There is no doubt that all persons dealing with or deriving title from a foreign corporation, are bound to take notice of every limitation upon its powers contained in its charter." In *Alexander* v. *Cauldwell* (83 N. Y., 480) the court say: "Everyone knows that corporations are artificial creations existing by virtue of law, and organized for purposes defined in their charters; and he who deals with one of them is chargeable with notice of the purpose for which it was formed; and when he deals with agents or officers of one of them, he is bound to know their powers and the extent of their authority. Corporations, like natural persons, are bound only by the acts and contracts of their agents, done and made within the scope of their authority." In *Davis* v. *Old Colony Railroad Company* (131 Mass., 258) it is said that every person who enters into a contract with a corporation is bound, at its peril, to take notice of the legal limit of its capacity.

In *Relfe* v. *Rundle* (103 N. Y., 222), it is said: "Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use of some of its powers while doing business away from its corporate home, but every person who deals with it everywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs both in life and after dissolution."

In Angel and Ames on Corporations (§ 256), it is said that where a corporation is created for particular purposes with special powers, the contract does not bind it if it appears from the express provisions of the statute creating the corporation or by necessary and reasonable inference from its enactment that the contract is *ultra vires*.

These authorities seem to show beyond question that it is entirely immaterial as to what the plaintiffs knew in reference to the limitations of the defendant's powers. If the corporation had no power to speculate in the manner in which it attempted to do, with the plaintiffs, the plaintiffs were bound to know this fact, and they cannot plead their ignorance in support of a claim founded upon a contract which they were bound to know that the corporation had no power to make. We have already seen that there is no dispute that if the plaintiffs were assumed to have had the knowledge conveyed by the title of the defendant that they must have known that the defendant had no power or authority to enter into the speculative contracts which form the basis or subject of this action. Upon an examination of the charter we find no power conferred which authorized this bank to enter into the speculations which it is claimed it did with the plaintiffs. Their powers were defined to be, first, that of a savings bank; and secondly, the power to loan money, to borrow money, buy and sell exchange, bullion, bank notes, government stocks and other securities.

There is nothing in their charter which in any degree seems to authorize this bank to engage in speculative purchases of cotton merchandise or any other personal property, and as we have seen that the powers of corporations only extend to the purposes defined in their charter, and that he who deals with one of them is chargeable with notice of the purposes for which it has been formed ; when he enters into a contract with such corporation for a purpose manifestly foreign to its charter, he is bound to know that such contract is *ultra vires*.

In the findings of fact, the learned justice has found that speculating in cotton or other articles of merchandise or property was not forbidden to said corporation either by its charter, by the constitution or by any statute of the State of Texas. We have seen that such speculations were forbidden by the charter of the corporation

because they were foreign to the purposes for which it was created. It is true that there was no evidence introduced in the case tending to show that such speculations were forbidden by the State of Texas. But this may be explained by the fact that under the objections of the plaintiffs evidence, tending to show that such speculation was forbidden by any statute of the State of Texas, was excluded. The objections were interposed upon the ground that the powers and privileges of the defendant bank were immaterial because the contracts in question were executed on the part of the plaintiffs. In view of this condition of the record, the plaintiffs in this action cannot recover unless the grounds stated in this objection are well founded.

It appears from the evidence that the transactions were entirely closed and resulted in a loss, and that this action was brought to recover the balance of such loss. And from these facts it is urged that the contract being an executed one the defendants cannot claim that it was *ultra vires*, or that its cashier had no power to make the same.

In considering this proposition it will not be necessary to pass upon the powers and authority of the cashier, because the difficulty with the plaintiffs case seems to be that neither the cashier nor the board of directors had any power to enter into any such contract, and the plaintiffs' claim can only be sustained upon the ground that the contract, although *ultra vires*, was executed. In support of this proposition is cited the cases of the *Whitney Arms Com pany* v. *Barlow* (63 N. Y., 62); the *Rider Life Raft Company* v. *Roach* (97 N. Y., 378), and *Parish* v. *Wheeler* (22 N. Y., 494). The ground upon which the plaintiffs in this case claim that the contract is executed is that the plaintiffs have paid out money at the defendant's request to the defendant's creditors. It is to be observed that the plaintiffs, if acting for other persons, have nowhere disclosed who they were ; and, therefore, applying the rule which is urged against the defendant, that although the plaintiffs knew that the defendant was acting as agent, yet not having disclosed its principals, it became a principal itself, these transactions are to be considered as transactions between the plaintiffs and defendant, as principals, neither of them having disclosed for whom they were acting or pretending to act. The

plaintiffs cannot claim, in one breath, that the defendant is a principal because the persons for whom it was acting were not disclosed, and then claim on behalf of themselves that they were acting for others, and hence are not to be treated as principals, they having failed to disclose for whom they are acting ; under the facts disclosed, the plaintiffs were personally responsible to the defendant. There is no evidence, therefore, that the plaintiffs have paid out any money to any particular person at the request of the defendant. This they were bound to show under the general denial contained in the answer if they sought to reach the defendant because of money laid out and expended at its request. In the case of the *Whitney Arms Company* v. *Barlow* (*supra*), the defendant had property which had been sold and delivered by the plaintiffs to the defendant, and the court held that the defendant could not keep the property without paying the purchase-price. The same state of affairs existed in the case of the *Rider Company* v. *Roach*, above referred to, and in *Parish* v. *Wheeler* it was held that though a corporation exceeded its legal powers in a purchase of personal property, the person who paid at its request the purchase-price of the property could maintain an action against the corporation, such corporation having possession of the property, and they could not defend on the ground that the purchase was *ultra vires*. In all of these cases the party seeking to be charged had possession of the property, which formed the basis of the action and such a defense could not be allowed as it would not advance justice, but on the contrary would accomplish a legal wrong.

In the case at bar the corporation has received nothing from the plaintiffs under the contracts in question, and hence occupies a very different position from those corporations in the cases cited, who were in actual possession of the property forming the consideration for the contract sued upon. In the case of *The Rider Company* v. *Roach* (*supra*) attention is called to the fact that some of the decisions hold that the plea of *ultra vires* can only be interposed by a corporation, and not by an individual dealing with such corporation. It is very doubtful whether that is the law in this State. In the case of *Sistare* v. *Best* (88 N. Y., 527) it is claimed by the respondents to be held that an agent is not to suffer for *ultra vires* acts when he does not know that they are *ultra vires*. Upon an

examination of that case we fail to find any such proposition. The acts referred to in that case were expressly held to be within the powers of the corporation, and a recovery was sustained upon that ground, and upon that ground alone. It would appear, therefore, that these contracts made between the plaintiffs and the defendant being beyond the authority of the corporation, and entirely foreign to the purposes of its incorporation, the losses sustained thereon cannot be recovered

The judgment must be reversed and a new trial ordered, with costs to appellants to abide event.

Brady and Daniels, JJ., concurred.

Judgment reversed, new trial ordered, with costs to appellant to abide event.