THE HOLMES & GRIGGS MANUFACTURING COMPANY, RESPONDENT, *v.* THE HOLMES & WESSELL METAL COMPANY, G. LIVINGSTON MORSE AND FREDERICK SHONNARD, APPELLANTS.

SAME *v.* G. LIVINGSTON MORSE.

*Ultra vires — in what action the defense cannot be raised — tender of stock to a purchaser who gives a note in payment therefor.*

In an action, brought upon a promissory note, bearing date December, 1884, for $25,000, made by the defendant, the Holmes & Wessell Metal Company, payable to the order of Frederick Shonnard, one of the defendants, and indorsed by the defendants Shonnard, Morse and Wessell, and delivered to the plaintiff, a manufacturing company, the defendants claimed that the contract was *ultra vires.*

Upon the trial it appeared that, in July, 1881, one Holmes, the president, and one Edwards, the secretary of the plaintiff, entered into an agreement with the defendants Morse, Shonnard and Wessell, by which it was agreed that a new company should be organized with a capital stock of $100,000, three-fourths thereof to be subscribed and paid for by the said Holmes and Edwards, and the remaining one-fourth by the other parties to the agreement. It was also agreed that the president and secretary of the plaintiff were to subscribe for 3,000 shares of the capital stock of the new company, and to pay for the same out of the proceeds of the sale to the new corporation, of the plant and materials of the plaintiff company and to hold the said stock, as trustees, or to transfer the same directly to the plaintiff.

The note in suit was made in pursuance of an agreement, dated December 1, 1884, executed by the plaintiff and the defendants Morse, Shonnard and one Charles Wessell, by which the plaintiff agreed to sell to them 1,440 shares of the stock of the defendant (the new corporation), standing on the books of the said company in the name of Edwards, as trustee, for the sum of $30,000, payable $5,000 in cash on signing the agreement, and the balance by certain promissory notes, of which the note in suit was one.

The agreement provided that the stock should be delivered on the payment of the note in question to the defendant Shonnard.

*Held,* that the claim made by the defendants that the plaintiff, being a domestic manufacturing corporation, could not acquire any ownership in or title to the

stock, either by original subscription in its own name or in the name of its officers, assuming to act as trustees, and that the contract was *ultra vires*, could not be sustained.

That, conceding that the plaintiff was prohibited by its charter from entering into such an arrangement, or dealing in such securities as the stock of the defendant company, the validity of that transaction was not the subject of investigation in this action.

That the action before the court was not upon any illegal contract which the plaintiff had made for the purpose of acquiring the stock of the defendant corporation, but was to recover upon a promissory note given in payment of stock, the title to which was vested in the plaintiff.

That as the contract in this case had been completed, and the title to the stock had passed to the plaintiff, it had a right to sell it and to take as a part of the purchase-price such securities as it saw fit, provided it acted in good faith.

*Sistare* v. *Best* (88 N. Y., 527) followed ; *Crocker* v. *Whitney* (71 id., 170); *Pratt* v. *Short* (79 id., 437) distinguished.

None of the stock represented by the note in suit had been delivered and none of it had been tendered, although the plaintiff had been and was ready and willing to deliver it after the payment of the notes.

*Held*, that in this case it was not necessary for the plaintiff to tender the stock in question, as the stock was to be delivered to a third party and not to the maker of the note, and that, under such circumstances, it could not have been the intention of the parties that the delivery of the stock and the payment of the note should be simultaneous acts.

---

In an action brought upon two other promissory notes made by the defendants Morse and one Charles Wessell, jointly and severally, whereby they promised, for a good consideration, to pay to the order of the plaintiff certain sums of money, the facts and defenses were the same as in the foregoing case, except that in this case the stock, to be delivered upon the payment of the notes in suit, was to be delivered to the makers of the notes.

*Held*, that the payment of the notes and the delivery of the stock were intended to be simultaneous acts, and that the makers of the notes were entitled, on payment thereof, to receive the stock.

That in order to entitle the plaintiff to the payment of the notes, it was bound to have the notes present, ready to be delivered up, and to offer to deliver the stock upon payment thereof, and that as no tender of the stock had been shown, the plaintiff in this latter case was not entitled to recover.

*Ocean National Bank* v. *Fant* (50 N. Y., 476) followed.

APPEAL from a judgment, entered in the office of the clerk of the county of New York on the 17th day of September, 1888, upon the report of a referee in favor of the plaintiff.

*Adam C. Ellis*, for the appellants.

*Sidney S. Harris*, for the respondent.

VAN BRUNT, P. J.:

This is an action on a promissory note bearing date December, 1884, for $2,500, made by the defendant the Holmes & Wessell Metal Company, payable to the order of Frederick Shonnard, one of the defendants, and indorsed by the defendants Shonnard, Morse and Wessell and delivered to the plaintiffs. The defenses were *ultra vires*, failure of or no consideration and non-tender of certain stock for the purchase-price of which the note in suit was given. The case was tried before a referee, and upon his report a judgment was entered in favor of the plaintiff from which this appeal is taken. In view of the rule of law applicable to the facts developed upon the trial it may be entirely unnecessary to recite many of the facts found by the referee, but it may be best to do so in order that the whole transaction may be understandingly set forth. The plaintiff was organized in July, 1869, under the manufacturing act of 1848, the objects of the corporation being the manufacture and sale of sheet and roll brass, wire and other articles composed wholly or in part of metal. In July, 1881, one Holmes, the president, and one Edwards, the secretary of the plaintiff, entered into an agreement with the defendants, Morse, Shonnard and Wessel, by which they agreed to organize a new company under the manufacturing act, to be known as the Holmes & Wessell Metal Company, with a capital stock of $100,000, three-fourths thereof to be subscribed and paid for by said Holmes and Edwards, and the remaining one-fourth by the other parties to the agreement.

The agreement further provided that the new company should buy from the plaintiff its plant at the price of $50,000. In pursuance of this agreement the parties signed and acknowledged the certificate incorporating the Holmes & Wessell Metal Company, which certificate was duly filed, and in which were named the said Holmes, Edwards, Shonnard and Wessell as trustees. On the 20th of July, 1881, a meeting of the plaintiff's stockholders was had at which a resolution was adopted authorizing the sale of the plant for $50,000, and also authorizing a sale of all the stock and material owned by the plaintiff at certain prices, amounting to about $31,000. The further resolution was adopted authorizing the president and secretary to subscribe for 3,000 shares of the capital stock of the Holmes & Wessell Company and to pay for the same out of the

proceeds of the sale of the plant and materials of the plaintiff company, and to hold the same as trustees or to transfer the same directly to the plaintiff. The first meeting of the stockholders of the defendant company was held on July 23, 1881, at which meeting all of its capital stock was subscribed for, and a resolution was adopted authorizing the purchase from the plaintiff of its plant, machinery and stock of metal at the price of $81,333.96. The stock of the defendant company was issued to the respective parties as subscribed for by them. Neither Holmes nor Edwards paid any cash for the stock subscribed for by them, but the stock subscribed for by Shonnard, Wessell and Morse was paid for in cash. On the 1st of September, 1881, the plaintiff company transferred to the defendant company its entire plant and machinery, etc., at the agreed price — $75,000 of that amount was in payment of stock subscribed for in the names of Holmes and Edwards, and the balance $6,333.96, was paid in cash by the defendant company. After the transfer of its plant the plaintiff discontinued its business and has not carried on the same since that time.

The note in suit was made in pursuance of an agreement dated December 1, 1884, executed by the plaintiff and the defendants Morse, Shonnard and one Charles Wessell. In that agreement the plaintiff agrees to sell to the other parties thereto 1,440 shares of the stock of the defendant company standing on the books of said company in the name of Edwards, as trustee, for the sum of $30,000, payable $5,000 in cash on signing the agreement, and the balance by certain promissory notes, of which the note in suit is one, being a note given by the defendant company and indorsed by Shonnard and others. The agreement provided that the stock should remain in the name of Edwards or some other officer of the plaintiff, as trustee, and might be voted on by him until delivered; also, that the stock should be delivered as follows: On payment of notes one and two, $6,000 of the par value thereof, and as each of said other notes was paid at maturity, $2,500 to the maker thereof, except that for the notes of said defendant company the stock was to be delivered to said Shonnard. None of the stock represented by the note in suit, which was a note made by the defendant company and indorsed by the individual defendants, has been delivered, and none of it has been tendered although the plaintiff has been ready and willing to

deliver the stock called for by the contract under which the notes were given at the maturity of the notes, and at all times since upon the payment of the notes. There were various other provisions in the agreement in regard to the election of trustees, and the salaries of the officers etc.

Upon this state of facts the defendant claimed that the plaintiff, being a domestic manufacturing corporation, could not acquire any ownership in or title to the stock, either by original subscription in his own name or in the name of its officers, assuming to act as trustees; and in considerering this proposition it is conceded that the plaintiff company were the real owners of this stock, and the persons in whose name the stock stood were simply acting as its trustees. And the case is to be determined upon the assumption that the plaintiff was the real owner of the stock and that the stock was being held for it.

Our attention has been called to numerous authorities going to show that the acquirement of this stock was contrary to law, and, therefore, void. Conceding that the plaintiff corporation was prohibited by its charter from entering into such an arrangement or dealing in such securities as the stock of the defendant company, the validity of that transaction is not the subject of investigation in this action. If the plaintiff company has violated its charter by this transaction, upon a proper action brought by the people, its franchise may be forfeited, the corporation dissolved and its business wound up. But the action now before the court is not upon any illegal contract which the plaintiff company has made for the purpose of acquiring the stock of the defendant corporation, but is to recover upon a promissory note given in payment of stock the title to which was vested in the plaintiff.

That this is the true situation is distinctly held by the Court of Appeals in the case of *Sistare* v. *Best* (88 N. Y., 527). In that case the plaintiff was employed as a broker to sell certain stock, the title to which the bank of which the defendant was receiver had acquired in violation of the provisions of its charter, and the plaintiff was held entitled to recover because in accepting the employment he was not bound to inquire in respect to the title of the bank to the stock. In that case it was held that, although the transaction by which the bank acquired possession of the stock in question was in

violation of its charter, that the title of the stock was vested in the bank as pledgee, and that it was not void, but, at most, was voidable only. Whether, under such circumstances, the pledgors could reclaim the stock without paying the lien the court declined to consider. In the case at bar, therefore, the title to the stock in question was vested in the plaintiff company. It had a right to sell the same, as was held in the case of the savings bank, and to contract in reference thereto, and it could be held to the obligations of such a contract.

The position of the defendant might be well taken if the plaintiff were suing to compel the defendants to deliver the stock in pursuance of an agreement so to do. It might very well be then held that the contract for the sale of the stock was an illegal one, and that an action to enforce an illegal contract could not be maintained. But in the case at bar the contract had been completed, the title to the stock had passed to the plaintiff; it had a right to sell it, as was held in the case of *Sistare* v. *Best* (*supra*); and having the right to sell it, it had a right to take as a part of the purchase-price such securities as it saw fit, provided it acted in good faith.

Questions of public policy as to the right of one corporation to invest in the shares of another are not questions which need to be considered in the determination of this appeal, because the contract under which the corporation acquired the title is not now under con sideration; and, whatever may have been the decision in other States, it is clear that contracts of this kind are not absolutely void, but, at most, are voidable only.

Our attention is called to the case of *Crocker* v. *Whitney* (71 N. Y., 170) where it was held that a mortgage given to a national bank to secure future advances was void, and could not be enforced for advances which were subsequently made, because the act under which such banks are incorporated prohibited them from taking a mortgage on real estate except to secure a pre-existing indebtedness. In that case there was an attempt to enforce an illegal contract. So the case of *Pratt* v. *Short* (79 N. Y., 437), and all the other cases cited on this point, were cases where an attempt was made to enforce a contract which was illegal. There was no illegality in the contract of the plaintiff, being the owner of the stock, to sell the same in the manner in which it was proposed to do, and which it attempted to do by the agreement of December, 1884.

The only other question which it is necessary to consider is the necessity of a tender of the stock in question.   The ordinary rule in reference to the payment of promissory notes is that where by the form of the note stock, or merchandise is to be delivered, or where collaterals have been deposited for the note, a tender of the collaterals or stock and merchandise at the time of the demand of payment of the note is necessary in order to make a complete default.   But in all these cases it would appear that the maker of the note upon payment was to be entitled to the collaterals, or to the stock or merchandise, and, therefore, it is assumed that the payment of the note and delivery of the consideration thereof are to be simultaneous acts, and one cannot be demanded without a tender of the other.

But in the case at bar the stock was to be delivered to a third party not the maker of the note.   The plaintiff, therefore, could not, upon demanding the payment of the note, deliver the stock, because it was not to be delivered to the maker, but, as already said, to a third party, and, therefore, it must have been the intention of the parties that after the payment of the note, then the claim to a delivery of the stock should become vested in the third person, and it could not have been the intention in that case that the delivery of the stock and the payment of the note should be simultaneous acts.

We think, therefore, for the reasons above stated, that there was a good consideration for the note in question, and that there was no failure thereof, and that a tender of the stock was not necessary before claiming payment of the note.

Judgment must be affirmed, with costs.

BARTLETT and MACOMBER, JJ., concurred.

Judgment affirmed, with costs.

---

THE HOLMES AND GRIGGS MANUFACTURING COMPANY, RESPONDENT, *v.* G. LIVINGSTON MORSE, APPELLANT.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered upon the report of a referee, in the office of the clerk of the county New York on the 17th day of September, 1888.