**[No. 1700.]**

## BAILY v. CARNDUFF ET AL.

1. PRINCIPAL AND AGENT—LIABILITY OF CUSTOMER TO BROKER FOR FAILURE TO DELIVER STOCK SOLD.

Where a party employs a broker to sell stock and after the broker sells refuses to deliver the stock, he is liable to the broker for his loss in purchasing the stock in the market to fill the contract of sale in addition to the broker's commission for making the sale.

2. PRINCIPAL AND AGENT—SALES—DELIVERY.

The principle that the seller of personal property is not bound to de-

liver the property till paid the price, does not apply as between a seller of stock and his broker employed to make the sale.

3. PRACTICE—INSTRUCTIONS.

One cannot object on appeal to a failure of the trial court to submit an issue to the jury where he asks for no instruction on the issue and makes no definite objections to the instructions as given, nor indicates to the court the proposition on which he relies.

*Appeal from the District Court of Arapahoe County.*

Mr. GEO. A. SMITH, for appellant.

Mr. HENRY W. HOBSON and Mr. JOHN S. MACBETH, for appellees.

BISSELL, P. J.

There is no dispute about the principal matters of fact, which being established, determine the right of this appeal. They are conceded by the pleadings, established by the testimony and found by the verdict. Therefrom we gather that in November, 1896, Baily, the appellant, employed Carnduff & Rusch as brokers to sell for him on the exchange at Colorado Springs 700 shares of Anaconda stock. At the time of the employment and when the direction to sell was given no limitation was placed on the authority of the brokers other than as to the price at which the stock must be sold and the sum which it must net the seller Baily. Acting under this general authority Carnduff & Rusch sold the stock on the exchange within the named price limit and thereafter notified him of the sale and the price received. Thus far there is no dispute. The parties are substantially agreed in their statements and if they were not these facts are established by the admissions in the pleadings as well as by the verdict of the jury. We now come to a disagreement between the brokers and the principal as exhibited by the testimony. The brokers insist that they notified Baily of the sale immediately after the transaction and that he said he would deliver the

stock at the First National Bank in Denver. Baily insists his statement was that he would deliver the stock at the First National Bank in Denver on receipt of the currency to which he was entitled from the sale price. We do not regard this difference as one of serious consequence because as we conceive subsequent events wholly destroy the significance and importance of Baily's contention, even though it is found to be true. At all events on the afternoon of the day of the sale the brokers wrote a letter to Baily and sent him what is known as a brokers' statement and a check on the First National Bank of Colorado Springs for the sale price. On Saturday Baily went to the First National Bank of Denver with his stock and when that bank refused to credit his account with the amount of the brokers' check, he declined to leave the stock and notified the brokers that he would not carry out the transaction. Thereupon one of the brokers came to Denver, stated the situation and informed him that they had been employed as brokers to sell the stock; that in the exercise of the authority it had been sold, and under the rules covering the exchange, of which they were members, they were bound to deliver the stock, and if he failed to furnish the shares they would be compelled to buy the stock in at whatever price they might be compelled to pay and deliver it under their contract. To this Baily responded that it made no difference to him what they did and what their obligations were for he should refuse to deliver the stock. At this time Baily made no demand for the money nor did he offer to deliver the stock on receipt of the currency or of bankable funds. He simply declined to deliver it at all and said the deal was off and he would not carry out his contract. This is the condition which in our judgment wholly concluded Baily with respect to this contention or his defense.

It is conceded by the attorney for the appellant, as indeed it must be under the authorities, that where a broker sells stock in obedience to the instructions of his customer who refuses to deliver, the customer will be liable to the broker

for the losses which he may sustain in fulfilling the contract. This proposition which the learned counsel for the appellant so frankly and rightly concedes is doubtless the law. The concession relieves us of the necessity to fully examine the question, or to cite many authorities to the point. *Vide Sistare v. Best*, 88 N. Y. 527.

Every fact essential to render Baily liable for the loss was stated at the outset. Carnduff & Rusch were brokers. Baily employed them to sell 700 shares of Anaconda stock, and placed no limitation on the power to sell, save as respects the price at which the stock was to be sold. The stock was sold within the price limit, and the principal and the brokers became bound to deliver to the vendee the 700 shares of Anaconda stock. The principal refused to deliver. It therefore follows under this conceded principle, the brokers would have a right to go into the market and buy it at the best price they could to fulfill their contract, and hold the principal not only for their commission but for their loss. This was the verdict, and this was the judgment. There is no controversy about the sum which the brokers were compelled to pay for the stock or the commissions to which they were entitled. The sum total was the verdict. This leaves only the consideration whether what happened was a sufficient defense. The appellant has built up an elaborate argument to the point, that where a person buys the vendor is not bound to deliver except on the receipt of the price. This would be of significance and force if the facts warranted its application. It is true as a general proposition, and is the law applicable to the sale of personal property. The suit presents no such case. There is nothing to show that the brokers were the purchasers of the stock. If they were not buyers, but simply brokers, the principle contended for has no application. The appellant next insists that the instructions which the court gave were erroneous because they failed to leave it to the jury to determine whether there was any modification of the contract after the employment. There are several answers to the contention; the first is that the appellant offered no such instruc-

tion.  He simply objected to the instructions given, asked no other, made no definite objection to the instructions as given, nor in any manner indicated to the court the proposition on which he relied.  In the next place we do not believe, as a matter of law, the instruction which he desired would have been right.  The transaction was complete when the same was made.  The rights and responsibilities, the liabilities and remedies of the vendor and the brokers were determined at that time.  The vendor was then bound to deliver his stock either to the vendee or the brokers, and he could in no manner insist on a delivery in Denver, because this was not made a condition at the time of the employment, and if the brokers afterwards waived and agreed to receive in Denver, there was no plea or proof to that point nor instruction asked with reference to it, so that the proposition ought to have been submitted to the jury.

Conceding, however, the brokers did agree to send the cash to the bank, or conceding that Baily so understood the agreement after the sale and that the brokers failed, yet, that did not relieve the principal from his liability.  We may concede Baily had the right to reject the brokers' check and refuse then to deliver the stock, if as he claims it was understood after the sale the money was to be sent to the First National Bank of Denver.  If this be true there was no limit of time within which that was done.  Baily insists the money was to come on Saturday because he wanted it, but there was no agreement between the brokers and the principal that the money was to be sent on that day as a condition precedent to the delivery or to a valid sale.  There is nothing in the testimony warranting this conclusion.  When he refused to deliver the stock and receive the brokers' check, the broker came to Denver on Monday and demanded the stock.  At this time, under the proof, the vendor Baily was bound to deliver.  He might doubtless have then insisted the money should be paid before he would surrender his certificate, but this was not his statement.  He simply repudiated the sale and refused absolutely to deliver.  Under these circum-

stances it does not lie with him to insist that he may repudiate the sale because the brokers' check was sent to the bank in place of the money or because no money was offered. The broker was not bound to offer the money. It may be very gravely questioned whether the vender was not bound to deliver the stock to the brokers, that they might tender it to the purchaser and receive the money and then remit to the seller. We are not called on to decide this precise question, but such would appear to be the natural and inevitable rule. The broker is the seller's agent; he stands in place of the principal, and as a rule it may be safely said the broker is not bound to advance the money before the principal delivers the stock to him which he has instructed and authorized him to sell. To this extent at least it would appear as though the seller was bound to trust the broker whom he employs. Whether this be or be not true to its full extent, it is true that at the time of the demand on Monday, in Denver, Baily was bound to deliver the 700 shares of stock to the brokers that they might complete their contract. We need not decide whether he had a right to insist on the receipt of the cash as a condition precedent to the delivery. He simply said, " The money did not come here Saturday and the deal is off." The trouble is the stock went from 85 to 107 within twenty-four or thirty-six hours, and the seller apparently thought he had a chance to make this better price, and as he put it, what loss might come to the brokers was no concern of his, and the brokers could protect themselves the best they could. We do not believe he had any such right.

We are unable to discover any error in the record which warrants a reversal of the judgment; we believe the verdict was right and that the judgment is sustained not only by the facts but by the law, and it will accordingly be affirmed.

*Affirmed.*