## WEIR v. DWYER.

(Supreme Court, Appellate Term.   January 21, 1909.)

1. CUSTOMS AND USAGES (§ 10*)—INCORPORATION IN CONTRACT.

Where parties have had dealings covering a considerable period, which, by common consent, have been conducted in accordance with the established custom of such business, the custom becomes a part of the contracts between them.

[Ed. Note.—For other cases, see Customs and Usages, Dec. Dig. § 10.*]

2. CUSTOMS AND USAGES (§ 12*)—EVIDENCE—ADMISSIBILITY.

In an action by a stockbroker for the balance of the price of stock bought for defendant, which was afterward sold on his failure to pay for it, it not being shown that defendant had had previous dealings with plaintiff or other brokers and was familiar with such transactions, evidence of the custom of brokers as to the manner of disposing of stock for which the purchasers refused to pay was not admissible.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 23; Dec. Dig. § 12.*]

3. BROKERS (§ 24*)—PURCHASES ON MARGIN—SALE BY BROKER—PLACE OF SALE—EVIDENCE.

Where a purchaser directed stock to be purchased on the curb, it is a fair inference that, if the stock was subsequently sold on the purchaser's failure to pay for it, the parties intended that it should be sold on the curb.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 24.*]

4. BROKERS (§ 24*)—PURCHASES ON MARGIN—FAILURE OF CUSTOMER TO PAY—SALES—PLACE OF SALE.

The broker's sale of stock, on the purchaser's failure to pay for it, should be made where the interested parties may attend to see that the sale is fairly conducted.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 24.*]

5. BROKERS (§ 16*)—SALES—PLACE OF SALE.

Where a broker is authorized to purchase or sell corporate stock, it is implied that the purchases or sales are to be made at the place where such transactions are customarily made.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 16.*]

6. BROKERS (§ 24*)—PURCHASE ON MARGIN—FAILURE OF CUSTOMER TO PAY—SALE BY BROKER.

A broker may sell stock purchased for a customer if the latter fails to pay for it, upon giving reasonable and timely notice of the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19; Dec. Dig. § 24.*]

7. PLEDGES (§ 56*)—SALE BY PLEDGEE—NOTICE OF SALE—WAIVER BY PLEDGOR.

A pledgor may waive, either expressly or impliedly, his right to object to the time and place of the sale of the pledged goods for his failure to make payment.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 168; Dec. Dig. § 56.*]

8. BROKERS (§ 24*)—MARGIN PURCHASE—FAILURE OF CUSTOMER TO PAY—SALE BY BROKER—OBJECTION—WAIVER—EVIDENCE.

Where the purchaser of stock was notified by his broker that the stock would be sold on the curb at a certain time if he failed to pay the purchase price of the stock, it was the purchaser's duty to object to the time and place of the sale if he intended to do so, and his statement that he had no objection to the sale because he had received no stock, the broker having refused to deliver it until he paid for it, to-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

gether with his failure to object to the sale, was sufficient to justify a finding that the purchaser had waived his right to object to the manner of the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19; Dec. Dig. § 24.*]

9. BROKERS (§ 24*)—MARGIN PURCHASE—TITLE TO PROPERTY.

One purchasing stock through a broker cannot demand delivery of the stock until he has paid or tendered the sum paid therefor by the broker.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19; Dec. Dig. § 24.*]

10. BROKERS (§ 24*)—MARGIN PURCHASE—FAILURE OF CUSTOMER TO PAY— SALE BY BROKER—PLACE OF SALE.

A broker purchased stock for defendant on the New York curb market, and, on defendant's failure to pay for it, gave him reasonable notice that, unless the amount due was paid within a certain time, he would sell it on that date on the curb, and it was thereafter sold on the curb at a sale open to the public, the stock being offered in a loud voice, and a bona fide effort was made to secure the best price. *Held*, that there was a substantial compliance with the rule requiring pledged property to be sold at a public place.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 24.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by John C. Weir against John Dwyer. From a judgment dismissing the complaint, plaintiff appealed. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and BISCHOFF and GUY, JJ.

Ivins, Mason, Wolff & Hoguet (Henry F. Wolff, of counsel), for appellant.

Philip J. Dunn, for respondent.

GUY, J. The evidence introduced on behalf of the plaintiff herein proved that defendant gave plaintiff an order to purchase for him on margin 100 shares of Chicago Subway Stock on the New York curb, under an agreement that plaintiff would pay on account of the purchase price thereof $500 in cash, the payment of the balance to be secured by defendant depositing with plaintiff as collateral security a bank book representing his account with certain bankers with whom he had a credit balance of $850, and an assignment of defendant's interest in said account and the moneys due him thereunder; that plaintiff bought said stock on the curb for defendant, paying therefor $14.50 per share, or a total of $1,450; that plaintiff notified defendant of such purchase and demanded payment of the $500 cash, and delivery of the bank book and assignment in accordance with defendant's agreement, but defendant refused to make such payment or to execute such assignment and deliver the bank book unless the stock certificate for the 100 shares was delivered immediately to him; that plaintiff then offered to deliver the certificate if defendant would pay him the full amount of the purchase price and commissions, which defendant refused; that plaintiff then served written notice upon de-

fendant dated December 13, 1907, that, unless payment of $500 was made on account of the purchase price of the stock on or before the 16th day of December following, plaintiff would sell said stock at 10:30 a. m. on that date for account of the defendant on the New York curb, the place where the stock had been purchased; that defendant subsequently called upon plaintiff, his attention was called to the place and manner of sale, and he replied that he had no objection, that he had received no stock; that, pursuant to such notice, no payment having been made by defendant, plaintiff did sell said stock on the New York curb for defendant's account on December 16, 1907, the sale resulting in a net loss of $144.98, for which sum demand was made upon defendant and payment refused.

During the course of plaintiff's testimony he testified that he was familiar with the customs of brokers in the city of New York trading on the New York curb market. He was then asked: "What is the custom of such brokers in case a customer refuses to pay for his stock or to put up margins?" This question, on objection by defendant's counsel, was excluded and an exception taken. Plaintiff then proved by his own testimony and the testimony of another expert witness that "the New York curb is a gathering, market place, of men brokers and the public who gather there to buy and sell and have bought and sold their different various securities; * * * that everybody is admitted there; that any member of the public could go there and buy and sell securities." The following question was then put to the plaintiff: "How is stock offered for sale on that market?" This question was excluded on objection, and an exception noted. Plaintiff was then again asked the question: "Are you familiar with the customs of brokers trading in that market, with reference to the sale of securities when a customer refuses to pay for his stock or put up margins?" This question was objected to and excluded; the court ruling as follows: "I hold as a matter of law you had no right to sell on the curb or anywhere else except at public auction"—to which ruling an exception was taken. Plaintiff then called an expert witness who was examined in detail as to the manner in which sales are made on the curb for account of customers; no objection being made to such testimony. The witness was then asked the question previously put to the plaintiff as to the custom of brokers in the city of New York with reference to the sale of securities bought by customers who refused to put up margins or pay for their stock. This question was excluded under objection and an exception taken. Plaintiff then rested his case, and a motion was made by defendant's counsel to dismiss the complaint, upon the ground "that the plaintiff has failed to establish that the stock in question was properly disposed of for the account of the defendant, and on the further ground that the plaintiff had failed to establish the cause of action named in the complaint." This motion was granted and an exception taken by plaintiff.

The principal questions raised upon this appeal are: First. Did the court err in excluding testimony as to the custom of brokers in the city of New York who do business on the curb as to the manner of disposing of stock purchased for customers who refuse to put up margins or to pay for their stock? Second. Did the court err in rul-

ing that the sale of the stock in question on the curb was not a proper sale, and that such sale was not binding upon defendant because it was not made at public auction.

As to the first proposition, there can be no question that where parties have had a course of dealings covering a considerable period, which by common consent have been conducted and settled in accordance with the established custom of such business, the custom enters into and becomes part of the transactions or agreements between them. Evidence, therefore, that defendant had had previous dealings with plaintiff and other brokers and was familiar with the custom of brokers governing this transaction, would have been admissible if presented in proper form. No questions were asked, however, by plaintiff's counsel upon this point, but the facts were assumed to exist by counsel in his argument. In the absence of such basic proof, the court properly excluded testimony as to the custom.

The second ground of appeal, the exception to the court's ruling that the sale of this stock on the curb in the manner established by the evidence did not constitute a proper sale and was not binding upon the defendant, because it was not a sale at public auction, presents a more serious question. Various early decisions of the courts of this state unquestionably establish the proposition that a sale upon the New York Stock Exchange, where only members are admitted, and where the outside public cannot participate in the buying and selling of stocks, would not constitute such a public sale as would be binding upon a pledgor in the event of default in payment on his part. This view has been modified by decisions in various other jurisdictions, and it is extremely probable that, in view of the development of facilities for trading on the stock exchange, the vast number of brokers ready and willing to act for the public, the great volume of daily transactions in most kinds of stocks, and the greater opportunity thus presented for realizing fair value and protecting the pledgor may lead to a modification of this rule by the courts of this state. In the present case, however, the question is presented in a materially different form. Transactions on the New York curb market are not confined to brokers. The uncontradicted evidence in this case is that it is an open market where any member of the public can attend and transact business, without the aid of a broker, where a pledgor upon a sale of his stock would have a full opportunity to protect himself, and where unquestionably a much better opportunity would be afforded for obtaining full value for the stock so sold than at a sale at public auction at a place where transactions in such stock are infrequent.

Another element which is entitled to consideration is the fact that, not only additional expense would be incurred by the broker in offering the stock at public auction, but the greater delay necessitated by following such course might result in a serious decrease in value, to the loss of the broker, who in this instance was entirely unsecured, owing to defendant's default in making payment as agreed. It is also a fair inference that the stock having, at plaintiff's request, been bought in the curb market, it was the intent of the parties that the stock, if sold, should be sold on the curb, where such sales were matter of daily occurrence. Sistare v. Best, 88 N. Y. 534. The theory of the law

is that the sale should be made at some place where all the parties interested may have an opportunity to attend and see that it is fairly conducted. In the case of an ordinary dealing in stocks where a client orders his broker to buy or sell, the place where the sales or purchases are to be made are places where transactions of this description are customarily made, and by employing a stock broker a client impliedly authorizes him to perform the business in the manner and at the place established by local usage. Dos Passos on Stock Brokers and Stock Exchanges (Ed. 1905) 351. See, also, Rosenstock v. Tormey, 32 Md. 169, 3 Am. Rep. 125.

As to the right of the broker to make the sale upon default in payment on the part of his customer, there can be no doubt. It is well settled that, upon failure to comply with the demand for payment, the stock may be sold by the broker upon reasonable and timely notice. Gruman v. Smith, 81 N. Y. 25; Stenton v. Jerome, 54 N. Y. 480. A pledgor may waive his right to object to the time and place where the sale is to be made and such waiver may be inferred. Willoughby v. Comstock, 3 Hill, 389. In this case the defendant received due notice of the time and place of the proposed sale coupled with demand for payment of a definite amount. If he was dissatisfied therewith, it was his duty to dissent. The evidence herein is that he stated he had no objection to the sale, but simply disavowed his ownership of the stock. Such disavowal was based solely upon plaintiff's refusal to deliver up the certificate for the stock before he had received payment of the purchase price and could not relieve him of liability. It is not until the client has paid or tendered the sum laid out that he can demand its delivery. See Kelley v. Upton, 5 Duer, 336; Genin v. Tompkins, 12 Barb. 265. Defendant's failure to object to the manner and place of sale when notified thereof, coupled with his statement that he had no objection to the sale, was evidence from which a jury might properly infer waiver. In the light of all these circumstances, it seems to me that the sale of this stock on the New York curb, after due demand for payment of a definite amount and due service of reasonable notice specifying the time and place of the proposed sale, at a public gathering, open to the entire public, at a place where anybody might participate in the purchase and sale of stock, the stock in question being offered in a loud tone of voice and an effort made in good faith to secure the best price therefor, was a substantial compliance with the meaning and spirit of the law requiring a public sale; the purpose of the law being to protect the pledgor from fraud or unfair dealing, and to insure to him an opportunity to secure the best possible value for the article pledged.

The ruling of the court that the sale of the stock in question on the New York curb was not binding upon the defendant, because it was not sold at public auction, was, therefore, reversible error.

Judgment reversed and a new trial ordered, with costs to appellant to abide the event. All concur.